IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| DAMIAN D. PHILLIPS, **Plaintiff,** | ) ) ) | |
| v. | ) ) | Civil Action No. 1:19-cv-501 |
| LOUDOUN COUNTY PUBLIC SCHOOLS, *et al.*, **Defendant.** | ) ) ) ) | |

## MEMORANDUM OPINION

This matter comes before the Court on Defendants Loudoun County Public Schools' and Loudoun County Public School Board's (the "School Defendants") motion to dismiss the *pro se* amended complaint.

In his amended complaint, Plaintiff Damian Phillips appears to allege the following causes of action against the School Defendants:

- race discrimination based on a failure to hire for positions in 2017 pursuant to Title VII of the Civil Rights of 1964 ("Title VII")

- disability discrimination based on a failure to hire for positions in 2017 pursuant to the Americans with Disabilities Act ("ADA")

- retaliation pursuant to Title VII and the ADA; and (iv) defamation.

Although plaintiff did not file a response to the motion to dismiss, plaintiff appeared at the hearing held on October 11, 2019 and argued in opposition to the motion to dismiss.

For the reasons that follow, plaintiff has stated a Title VII race discrimination claim based on the School Defendants failure to hire him for positions he applied for in 2017. The School Defendants correctly argue that any claim for discrimination based on a failure to promote in 2015

1

is 2015. Additionally, the School Defendants correctly argue that plaintiff has failed to state a claim: (i) for disability discrimination because plaintiff has failed to identify a qualifying disability; (ii) for retaliation because plaintiff has failed to show a causal connection between his protected activity and any adverse employment action; and (iii) for defamation because the statement on which he relies is an opinion and not capable of being proved false. Accordingly, the motion to dismiss must be granted in part and denied in part. As explained *infra*, Plaintiff will have an opportunity to file a second amended complaint to state a claim for disability discrimination and retaliation and must file his amended complaint within fourteen (14) days of the entry of this Memorandum Opinion and accompanying Order. Plaintiff's defamation claim, however, must be dismissed with prejudice because it is barred by the statute-of-limitations and because it is based on a statement that is not defamatory under controlling Virginia law.

## I.

The following facts are derived from the allegations in the amended complaint,[1] which are taken as true solely for the purpose of resolving the motion to dismiss. *See Papasan v. Allain*, 478 U.S. 265, 283 (1986).

- Plaintiff is an African American male with a permanent disability.[2] *See* Am. Compl. at 4.

---

[1] The facts recited here are derived only from the amended complaint filed on August 1, 2019 (Dkt. 35), for the facts at issue on this motion to dismiss. It is well-settled that an amended pleading supersedes a prior pleading and renders the prior pleading of no effect. *See Young v. City of Mount Ranier*, 238 F.3d 567, 573 (4th Cir. 2001) ("[A]n amended pleading supersedes the original pleading, rendering the original pleading of no effect."). To the extent that plaintiff has alleged facts in his prior pleadings that are not included in the current amended complaint, those facts are not, and cannot be, considered on this motion to dismiss as they are not part of the operative pleading in the case.

[2] In his amended complaint, plaintiff does not identify his specific disability. One of the attachments to the amended complaint notes, however, that plaintiff has permanent muscular dystrophy and nerve damage.

2

- He has a master's degree in general education and a master's degree in special education. *See id.*

- Plaintiff is also eligible for a provisional license[3] in Virginia. *See id.*[4]

- In August 2014, plaintiff was working for the School Defendants as a teaching assistant and as the head freshman football coach at Freedom High School. *See id.* at 4.

- In 2015, plaintiff applied and interviewed for the varsity football coaching position at Freedom High School. *See id.* at 5.

- When plaintiff appeared for the 2015 varsity football coach interview, he overheard the principal, Doug Fulton, say: "This nigga will not be my next Head Varsity Football coach." *Id.* Plaintiff also overheard laughter from an unidentified community participant and from Athletic Director Brett Miller. *See id.*

- During the interview, Fulton also commented that he did not need another "disability" in his school. *Id.*

- In his amended complaint, plaintiff alleges that his disability does not impact his ability to perform the essential functions of his job as a teacher and a coach. *See id.*

- On September 9, 2015, an unnamed student emailed plaintiff to let him know that Fulton had called plaintiff "something racist." *Id.* at 6.

- In a separate incident, assistant principal Chaudhry Neelum and Fulton requested that a student ask plaintiff to escort the student to the bathroom to "baptize" him. Am. Compl. at 6.

- When the student made the request of plaintiff, plaintiff immediately denied the

---

[3] Under Virginia law, a provisions license means a "nonrenewable license issued by the Board of Education for a specified period of time, not to exceed three years, to an individual who may be employed by a school division in the Commonwealth and who generally meets the requirements specified in the Board of Educations regulations for licensure, but who may need to take additional coursework, pass additional assessments, or meet alternative evaluation standards to be fully licensed with a renewable license." Va. St. § 22.1-298.1.

[4] In this amended complaint, plaintiff alleges that Virginia is a right-to-work state. This allegation is irrelevant to plaintiff's claims; the right-to-work statute provides that "the right of persons to work shall not be denied or abridged on account of membership or nonmembership in any labor union or labor organization." Va. Code § 40.1-58. Plaintiff has not alleged any facts concerning union activities or union membership.

3

- request and reported the request to a special education teacher. *See id.*

- The next day, the student informed plaintiff that Neelum and Fulton had asked the student to make the request. *See id.*

- Later, Fulton and two assistant principals came to plaintiff's class and requested that plaintiff come to the office. *See id.*

- In response, plaintiff's students began chanting "Coach Phillips is in trouble." *Id.*

- In a meeting with the principal and assistant principals, plaintiff was provided with a performance evaluation that stated: "Mr. Phillips needs to make sure that when he first receives information that could severely effect [sic] the health and/or safety of a student, he needs to inform the program teachers and the administration right away. Even if the student is telling Mr. Phillips out of a close relationship, it is Mr. Phillips' professional duty to pass on sensitive information." *Id.* at 6-7.

- Plaintiff felt humiliated and singled out by this language. *See id.* at 7.

- Prior to this 2015 performance evaluation, plaintiff had not received any feedback concerning his performance for the school year. *Id.* at 6.

- Plaintiff objected to his 2015 performance evaluation and requested evidence that he had not followed the directive referenced. *See id.* at 7.

- In response, plaintiff was told that the school administration does not need any evidence to make such a statement. *See id.*

- After receiving his performance evaluation, plaintiff submitted complaints regarding "mistreatment" from administrative staff at Freedom High School. *See id.* at 7.[5]

- In July 2015, plaintiff voluntarily separated from the School Defendants and from Freedom High School due to an illness. *See id.* at 7. At the time of his separation, plaintiff was a teacher in good standing. *See id.*

- In 2017, after addressing his illness, plaintiff applied for several new teaching and coaching jobs with the School Defendants. *See id.* at 7.

- Specifically, in the fall of 2017, plaintiff applied for: (i) a JV head basketball coaching position with Loudoun County High School; and (ii) teaching and

---

[5] Plaintiff does not identify any other facts regarding to whom he addressed these claims, what claims of mistreatment the complaints involved, or whether the alleged mistreatment was ever addressed by the School Defendants.

4

coaching positions with Dominion High School.[6] *See id.* at 7.

- Loudoun County High School initially considered plaintiff for a coaching position and plaintiff began coaching pre-season basketball games there. *See id.* at 8.

- Plaintiff was later removed from employment consideration by Loudoun County High School. *See id.* at 8.

- Plaintiff alleges that he was qualified, but rejected for, these positions and that there is a demand in Loudoun County schools for special education teachers. *See id.* at 7.

- Plaintiff alleges that he was not hired for these positions due to his race and his disability. *See id.* at 8.

- On April 25, 2018, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC").

- Thereafter, plaintiff received a right-to-sue letter and timely filed his original complaint in this case.

## II.

The well-settled motion to dismiss standard does not require extensive elaboration. As the Supreme Court has made clear, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). Importantly, in making this determination, a district court must "accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff]." *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015). But a district court is not bound to "accept as true a legal

---

[6] Plaintiff also identifies a position with South Lakes High School and attaches an exhibit listing two additional positions for which he applied in 2019. South Lakes High School is in Fairfax County, however; thus, the School Defendants are not responsible for any decisions made by that school. Additionally, plaintiff makes no allegations in his amended complaint regarding his application for positions with the School Defendants in 2019. Nor does it appear from the amended complaint that plaintiff has exhausted any claims that he may have concerning his 2019 applications with the Equal Employment Opportunity Commission ("EEOC").

5

conclusion couched as a factual allegation." *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014). Additionally, the Fourth Circuit has recognized that, "as a general rule[,] extrinsic evidence should not be considered at the 12(b)(6) stage." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

### III.

Plaintiff first asserts a claim for failure to hire pursuant to Title VII. Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a)(1). A plaintiff may establish a Title VII claim through either direct or indirect evidence of discrimination. Direct evidence is "evidence of conduct or statements that both reflect directly on the alleged discriminatory attitude and that bear directly on the contested employment decision." *Johnson v. Mechs. & Farmers Bank*, 309 F. App'x. 675, 681 (4th Cir. 2009) (quoting *Taylor v. Va. Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (*en banc*)). Indirect claims under Title VII are analyzed under the well-established burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–07 (1973). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, (1993). To do so, a plaintiff must show: (i) that he is a member of a protected group; (ii) that there was a specific position for which he applied; (iii) that he was qualified for that position; and (iv) that he was rejected from the position under circumstances giving rise to an inference of discrimination. *See Williams v. Giant Food Inc.*, 370 F.3d 423, 430 (4th Cir.2004).

Although plaintiff alleges clear examples of direct discrimination stemming from his application for a promotion at Freedom High School where he was employed in 2015, the School

Defendants correctly argue that any claims plaintiff may have had based on conduct from 2015 are not timely and may not form the basis of plaintiff's current complaint.[7] Thus, to the extent that plaintiff attempts to base his claims on alleged discrimination in 2015, dismissal of these claims as untimely would be required. But fairly read, the amended complaint does not assert any claims based on discrimination alleged to have occurred in 2015. Rather, plaintiff bases his claims on the School Defendants failure to hire him in 2017. In this regard, plaintiff has stated a claim of race discrimination under Title VII and the motion to dismiss must be denied.

### A. 2015 CONDUCT

There is no doubt that any discrimination claims based on the alleged events in 2015 would be untimely. An EEOC charge must be filed within 300 days after an alleged unlawful employment action occurs. *See* 42 U.S.C. § 2000e-5(e)(1). The rule applies to "any 'discrete act' of discrimination." *Mezu v. Morgan State Univ.*, 367 F. App'x 385, 388 (4th Cir. 2010). As the Supreme Court has held, "[a] claim is time barred if it is not filed within these time limits." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).

Here, plaintiff filed his charge with the EEOC on April 25, 2018. Accordingly, the 300-day period covers any alleged discrimination that occurred on or after June 29, 2018. Plaintiff alleges that during a 2015 interview for a coaching position he overheard the hiring officials call him the n-word and state that they would not hire a disabled person. *See* Am. Compl. at 5. The School Defendants correctly note that any cause of action based on conduct that occurred in 2015

---

[7] Plaintiff's allegations concerning the discrimination that he suffered in applying for a promotion at Freedom High School in 2015 are serious and would be a basis for a discrimination claim under Title VII if they had been timely asserted. *See* Section III.A, *infra*. In any event, regardless of whether those allegations are timely, it is important for the School Defendants to investigate these allegations and to take appropriate steps to ensure that race and disability discrimination is not occurring in the Loudoun County school system.

7

is untimely and must be dismissed. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 109. The School Defendants also correctly argue that plaintiff's reference to the continual nature of the discrimination that he alleges he suffered is insufficient to avoid to this result. Although a continuing violation theory may – in certain circumstances – save a claim that is otherwise time-barred, those circumstances are not present here. Plaintiff "has admitted that he believed, at every turn, that he was being discriminated against" and a "knowing plaintiff has an obligation to promptly file or lose his claim." *Williams v. Enter. Leasing Co.*, 911 F. Supp. 988, 997 (E.D. Va. 1995) (quoting *Sabree v. United Brotherhood of Carpenters and Joiners*, 921 F.2d 396, 402 (1st Cir. 1990)). Here, plaintiff's claims regarding the use of the n-word in a job interview is a clear example of direct discrimination and plaintiff could not be unaware of the accrual of his discrimination claim when he failed to obtain that position in 2015. Nor could there be a continuing violation where plaintiff voluntarily separated from the School Defendants between July 2015 and 2017.[8] Accordingly, plaintiff may not base a Title VII claim on conduct from 2015 and, indeed, his amended complaint fairly read only alleges a claim based on events in 2017.

Plaintiff's allegations of discrimination based on conduct from 2017, as discussed below, fall well within the 300-day period.[9] Thus, it is appropriate to analyze whether plaintiff has stated

---

[8] *See, e.g., Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 716 (3rd Cir. 1997) (holding that there was no continuing violation where plaintiff had a seven month break in employment); *Garrison v. Burke*, 165 F.3d 565, 570 (7th Cir. 1999) (holding that for various acts of discrimination "to be joined together into a single claim . . . the acts must be reasonably close to each other, in time and circumstances"); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir. 1998) (holding that gaps of one or more years between alleged incidents breaks the asserted continuum of discrimination and precludes finding a continuing violation).

[9] All of plaintiff's allegations regarding direct discrimination fall beyond the 300-day statutory period. Plaintiff's remaining allegations concern conduct from 2017 that is more indirect. Thus, plaintiff's claim for race discrimination based on the School Defendant's 2017 conduct must proceed under the well-established *McDonnell-Douglas* burden-shifting framework.

a cause of action based on the School Defendants alleged 2017 conduct.[10]

## B. 2017 CONDUCT

In the amended complaint, plaintiff recounts the discrimination he faced in 2015 because it informs his allegations of race discrimination stemming from the School Defendants failure to hire plaintiff in 2017. Plaintiff alleges that he applied for two positions within the 300-day period before his EEOC charge: (i) a coaching position at Loudoun County High School; and (ii) a coaching and teaching position at Dominion High School. In the motion to dismiss, the School Defendants do not address whether plaintiff has stated a claim based on his application for these positions. A review of the amended complaint shows that plaintiff has stated a claim for race discrimination based on the School Defendants failure to hire plaintiff in 2017. Accordingly, the School Defendants' motion to dismiss must be denied in this regard.

As noted above, to state a claim of discrimination based on a failure to hire plaintiff must allege that: (i) he is a member of a protected group; (ii) there was a specific position for which he applied; (iii) he was qualified for that position; and (iv) he was rejected from the position under circumstances giving rise to an inference of discrimination. *See Williams,* 370 F.3d at 430. Plaintiff has satisfied each of those four elements. Plaintiff has alleged: (i) that he is African American; (ii) that he applied for specific positions at Loudoun County High School and Dominion High School; (iii) that he was qualified for the positions for which he applied; and (iv) that he was rejected for the position under circumstances giving rise to an inference of discrimination. The

---

[10] It is important to note that the alleged evidence of conduct in 2015 may be relevant to plaintiff's 2017 discrimination claims if the persons involved in 2015 were also decision-makers in the 2017 hiring process or influenced the 2017 hiring process. No allegation in the amended complaint asserts such a connection. Without such an allegation, the 2015 conduct is irrelevant because there is no factual basis for inferring that the 2015 conduct infected the 2017 hiring decision.

School Defendants correctly do not dispute that plaintiff has satisfied these elements.

At the motion to dismiss stage, "district courts should not undertake a 'full causation analysis' in evaluating the sufficiency of the prima facie case." *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 90 (D.D.C. 2009). Stating a claim at the threshold pleading standard is only the beginning. At the summary judgment stage, plaintiff must establish that there is admissible evidence to prove the elements of his claims or, at least, that there are disputed issues of material fact in this regard. At trial, plaintiff must prove his case by a preponderance of the evidence. At the threshold, however, plaintiff has stated a plausible claim for race discrimination under Title VII based on the School Defendants' 2017 conduct; thus, the motion to dismiss must be denied with respect to that claim.

## IV.

Plaintiff's ADA claim for discrimination is also reviewed under the *McDonnell Douglas* burden-shifting framework. *See Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (citing *McDonnell Douglas*, 411 U.S. at 802); *Perry v. Comput. Scis. Corp.*, 429 F. App'x 218, 219–20 (4th Cir. 2011). Under that framework, plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *See Perry*, 429 F. App'x at 220. To establish this *prima facie* case, plaintiff must show that: (i) he is disabled within the meaning of the ADA; (ii) he was otherwise qualified for the position; and (iii) he suffered an adverse employment action on the basis of his disability. *See id.* (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005)). An employer must be aware of an individual's disability for liability to exist. *See Estate of Hoffman v. Baltimore City Pub. Schs.*, 173 F.3d 424, at *1 (4th Cir. Feb. 10, 1999) (unpublished).

Like Title VII, the ADA also has a 300-day rule. *See* 42 U.S.C. § 12117; 42 U.S.C.

§ 2000e-5(e)(1). Plaintiff has alleged that Fulton, the principal at Freedom High School, commented in 2015 that he did not need another "disability" in his school. Am. Compl. at 5. As discussed above, the alleged discrimination that plaintiff suffered in 2015 may not form the basis for plaintiff's disability discrimination claim. Again, however, plaintiff has alleged that he applied for positions in 2017 that he did not obtain because of his disability. Accordingly, the Court will analyze whether plaintiff has alleged facts sufficient to establish a *prima facie* case.

Here, plaintiff alleges that he is "permanently disabled," but does not identify his disability in the amended complaint. Am. Compl. at 4. Although plaintiff explains that he has permanent muscular dystrophy and nerve damage in an attachment to the amended complaint, plaintiff must allege facts concerning his disability in the operative pleading sufficient to establish that plaintiff is disabled within the meaning of the ADA. The ADA broadly defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Plaintiff may state a claim for disability discrimination under the ADA by alleging that he meets any of these three definitions and by alleging facts to support that assertion. In the amended complaint, plaintiff does not allege that his muscular dystrophy or nerve damage limits a major life activity. Indeed, the only additional allegation that plaintiff makes concerning his disability is that his "disability does not impact [his] ability to perform the essential functions of [his] job in either a teaching and/or coaching capacity." Am Compl. at 5. Accordingly, plaintiff has not alleged sufficient facts to establish that he falls within the first disability definition. Nor does plaintiff allege that he has a record of a disability or that he is regarded as having a disability by any of the School Defendants' decision-makers for the positions

for which he applied in 2017.[11] Plaintiff must either identify a qualifying disability, identify a record of such disability, or assert that he was regarded as having a disability, as defined by the ADA, and allege facts sufficient to support those allegations. Plaintiff fails to do so in the amended complaint and, therefore, his claim for disability discrimination must be dismissed without prejudice and with leave to file a second amended complaint.

Moreover, plaintiff does not allege that the hiring officials at the two schools at which he applied for positions in fall 2017 were aware of plaintiff's disability. At the motion to dismiss stage, defendant must allege that hiring officials at the School Defendants *knew* of his disability when they decided not to hire him. *See Estate of Hoffman*, 173 F.3d at *2 (finding that plaintiff failed to establish a *prima facie* case where there was no evidence that "any of the principals with whom he interviewed were aware of his mental illness"). As the Fourth Circuit has sensibly held, "[a]t the most basic level, it is intuitively clear when viewing the ADA's language in a straightforward manner that an employer cannot [fail to hire] an employee 'because of a disability' unless it knows of the disability." *Huppenbauer v. May Dep't Stores Co.*, 99 F. 3d 1130, at *7 (4th Cir. Oct. 23, 1995) (unpublished). Because plaintiff fails to allege that the decision-makers at Dominion and Loudoun County High Schools knew of his disability (or his record of a disability or regarded him as disabled within the meaning of the ADA), plaintiff cannot establish that the School Defendants failed to hire him *because of* his disability – the third element of his *prima facie* case.[12]

---

[11] Although Fulton may have regarded plaintiff as being disabled such that plaintiff could have satisfied the third disability definition, plaintiff has not alleged that any decision-maker involved in the 2017 hiring process overheard those remarks or made similar remarks so as to establish that those decision makers regarded plaintiff as disabled.

[12] Plaintiff asserts in conclusory fashion that he has been discriminated against because of his disability. Such allegations are insufficient to withstand a motion to dismiss. *See Iqbal*, 556

Thus, in his amended complaint, plaintiff has not alleged sufficient facts to establish that he meets the ADA's statutory definition of disability or that he was not hired for positions at Dominion and Loudoun County High Schools in 2017 on the basis of his disability. Accordingly, the motion to dismiss must be granted. Plaintiff's ADA discrimination claim will be dismissed without prejudice and plaintiff will have fourteen (14) days from the entry of this Memorandum Opinion to amend his complaint for to state a claim for failure to hire based on disability discrimination under the ADA.

## V.

Plaintiff also alleges that the School Defendants violated Title VII and the ADA by retaliating against him. To establish a *prima facie* case of retaliation, plaintiff must prove three elements: "(1) that [he] engaged in protected activity; (2) that [his] employer took an adverse employment action against [him]; and (3) that there was a causal link between the two events." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 271 (4th Cir. 2015) (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005)) (addressing Title VII claim); *A Society Without a Name v. Va.*, 655 F.3d 342, 350 (4th Cir. 2011) (same elements for ADA claim). Although Title VII and the ADA do not protect general complaints of unfair treatment, a plaintiff need not have filed a formal complaint with the EEOC to engage in a protected activity. *See Burgess v. Bowen*, 466 F. App'x 272, 282 (4th Cir. 2012) (holding "an employee's complaint constitutes protected activity when the employer understood, or should have understood, that the plaintiff was opposing discriminatory conduct").

---

U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Davis v. Va. Dept. of Corr.*, No. 16-cv-327, 2017 WL 2927976, at *3 (E.D. Va. June 30, 2017) ("Despite plaintiff's conclusory statements to the contrary, plaintiff has not sufficiently alleged that [defendant] discriminated against him solely because of his disability.").

Defendant correctly argues that plaintiff has failed to establish the third element of his *prima facie* case. The only protected activity in which plaintiff clearly engaged, as alleged in the amended complaint, is his April 25, 2018 filing of an EEOC charge of discrimination.[13] The amended complaint, however, does not identify any positions for which plaintiff applied and from which he was rejected *after* he filed his EEOC charge. Plaintiff identifies only two positions for which he applied and from which he was rejected – the Loudoun County High School and Dominion High School. Plaintiff applied for both of those positions in fall 2017, well *before* the only protected activity that he has alleged. To state a claim for retaliation based on his EEOC charge, plaintiff "must show that the adverse employment action took place after the protected activity and because of the protected activity." *Byers v. HSBC Fin. Corp.*, 416 F. Supp. 2d 424, 438 (E.D. Va. 2006) (citing *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 651 (4th Cir. 2002) and *Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998)). Plaintiff has not alleged either of these elements of his retaliation claims, because he does not allege that any adverse employment actions occurred *after* his 2018 EEOC charge. Accordingly, plaintiff has not alleged that the School Defendants retaliated against him *because of* any protected activity.

As with plaintiff's failure-to-hire disability discrimination claim, to establish the causal

---

[13] Plaintiff also alleges that he submitted complaints regarding "mistreatment" from administrative staff at Freedom High School, presumably from 2015. Am. Compl. at 7. The amended complaint fails to allege facts that establish a causal connection between the alleged complaints of mistreatment and any adverse employment action taken by the School Defendants – as he must do. Plaintiff does not allege the specific dates on which he complained of mistreatment, about what mistreatment he complained, or to whom he complained – all of which would be necessary to allege to state a claim for retaliation. It is not clear from the allegations in the amended complaint whether these complaints constituted protected activities under Title VII or the ADA, which is also necessary for plaintiff to state a claim. Accordingly, plaintiff *may* be able to base a retaliation claim on his 2015 complaints – assuming that they constitute protected activities – but he has not done so in the amended complaint.

14

link necessary for the third element of a retaliation claim, plaintiff must allege that the persons who are alleged to have retaliated against him *knew* of his protected activities. The Fourth Circuit has held that knowledge is "absolutely necessary" to support the requisite causation between plaintiff's protected activities and an alleged adverse employment action by the School Defendants. *Dowe v. Total Action Against Poverty,* 145 F.3d 653, 657 (4th Cir.1998); *see also Landino v. Sapp,* 520 F. App'x 195, 198 (4th Cir. 2013) (plaintiff failed to allege "that any of his supervisors responsible for the alleged discrimination knew that he was claiming discrimination based on a protected status"). Plaintiff's amended complaint does not allege that any persons making decisions regarding his employment knew that he had engaged in a protected activity by filing his 2018 EEOC charge. Thus, plaintiff cannot show that he was retaliated against because of his protected activity where plaintiff has not alleged that the relevant decision-makers knew of his protected activity.

In short, to state a claim for relief based on Title VII or ADA retaliation, plaintiff must identify: (i) the alleged protected activity in which he engaged; (ii) a subsequent adverse employment action taken by the School Defendants; (iii) knowledge of the alleged protected activity by the persons involved in the adverse employment action; and (iv) facts demonstrating that the adverse employment action was *because of* the protected activity in which he engaged. Plaintiff has not alleged such facts in his amended complaint. Therefore, plaintiff's amended complaint must be dismissed without prejudice. Plaintiff will have fourteen (14) days from the entry of this Memorandum Opinion to amend his complaint for a final time to state a claim under either Title VII's or the ADA's retaliation provisions.

## VI.

Plaintiff's final cause of action is a defamation claim based on a statement in his 2015

performance evaluation. The elements of a defamation claim under Virginia law are: "(1) publication of (2) an actionable statement with (3) the requisite intent." *Jordan v. Kollman*, 269 Va. 569, 575 (2005). As the Supreme Court of Virginia has held, "[t]o be actionable, the statement must be both false and defamatory." *Id.* For a statement to be false, it must also be factual. *See Tharpe v. Saunders*, 285 Va. 476 (2013). Thus, "[s]tatements that express only the speaker's opinion and not matters of fact are not actionable as defamation because such statements cannot be shown to be false." *Gov't Micro Res., Inc. v. Jackson*, 271 Va. 29, 40 (2006). Similarly, the Fourth Circuit has recognized that opinions are "not actionable under Virginia law" and that "statements that 'do not contain provably false factual connotation, or statements which cannot reasonably be interpreted as stating actual facts about a person' are opinions." *Nigro v. Va. Commwlth. Univ./Medical College of Va.*, 492 F. App'x 347, 356 (4th Cir. 2012) (citing *Chaves v. Johnson*, 230 Va. 112 (1985) and *Yeagle v. Collegiate Times*, 255 Va. 291 (1998)).

Plaintiff's defamation claim is based on a single statement in his 2015 performance evaluation. *See* Am. Compl. ¶ 10, at 10. The 2015 performance evaluation stated: "Mr. Phillips needs to make sure that when he first receives information that could severely effect [sic] the health and/or safety of a student, he needs to inform the program teachers and the administration right away. Even if the student is telling Mr. Phillips out of a close relationship, it is Mr. Phillips' professional duty to pass on sensitive information." *Id.* at 6-7.

To begin with, the statute of limitations for defamation under Virginia law is one year. *See* Va. Code § 8.01-247.1. Furthermore, "[a]ny cause of action that a plaintiff has for defamation accrues on the date that the defamatory acts occurred." *Askew v. Collins*, 283 Va. 482, 487 (2012). Moreover, Virginia follows the "single publication rule," which "permits only

16

one cause of action to be maintained for any single publication, even if heard or read by two or more third persons." *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 918 (E.D. Va. 2004) (citing *Morrissey v. William Morrow Co.*, 739 F.2d 962 (4th Cir. 1984) and *Restatement (Second) of Torts* § 557A(4) (1997)). As this Court has previously held, "[a]lthough subsequent distribution of a defamatory statement may continue to increase plaintiff's compensable damages, it does not create independent actions or start the statute of limitations running anew." *Id.* Plaintiff's performance evaluation may have been available for other schools to review as they considered his employment, but the single publication rule requires that plaintiff institute his suit within one year of the initial publication. Because plaintiff's performance review was originally published in 2015, plaintiff's 2019 defamation claim is untimely and barred by the statute of limitations. *See* Va. Code § 8.01-247.1.

Additionally, plaintiff's defamation claim fails because plaintiff does not allege an actionable statement; instead, the performance evaluation contains an opinion. In essence, the performance review states that plaintiff needs to follow certain rules pertaining to student health and safety. *See* Am. Compl. at 6-7. This statement is not demonstrably false as it simply asserts a need to comply with policy without regard to whether plaintiff has previously complied with the policy or not. Indeed, the performance evaluation makes no factual assertions regarding plaintiff's compliance with the policy at all. The Supreme Court of Virginia has held that similar statements concerning an employee's need to improve or to take certain actions are opinions and "not susceptible to proof as a matter of fact." *Raytheon Tech. Servs. Co. v. Hyland*, 273 Va. 292, 205 (2007). In *Raytheon Tech. Servs.*, plaintiff alleged that the following statement was defamatory: "She has received specific feedback from her customers, the Beacon group study, her employees, and her leader on her need to listen and learn from others, yet she has appeared to

17

be unwilling to accept and work with this feedback." *Id.* On these facts, the Supreme Court of Virginia held that such statements were opinions and thus could not support a defamation claim. *Id.* Similarly, courts within the Eastern District of Virginia have held that "a description of plaintiff's work performance . . . qualifies as a statement of opinion." *Kuhar v. Devicor Prods., Inc.*, No.15-cv-1533, 2016 WL 6211711, at *11 (E.D. Va. Oct. 24, 2016); *see also Dragulescu v. Va. Union Univ.*, 223 F. Supp. 3d 499, 511 (E.D.Va. 2016). Plaintiff's 2015 performance evaluation falls squarely within these holdings. Opinion statements, like the one contained in plaintiff's 2015 performance evaluation, do not contain provably false information and thus are not defamatory under controlling Virginia law. *See Nirgro*, 492 F. App'x at 356. In sum, because the statement contained within plaintiff's employment evaluation is an opinion, plaintiff has failed to state a claim for defamation.

Because plaintiff's defamation claim is untimely and because it relies on an opinion,[14] plaintiff has failed to state a cause of action for defamation under Virginia law. Moreover, neither of these defects are capable of being remedied by plaintiff. Accordingly, plaintiff's defamation claim must be dismissed with prejudice.

## VII.

For the reasons set forth above, Defendant's motion to dismiss (Dkt. 36) must be granted in part and denied in part. The motion is granted with respect to plaintiff's claims: (i) for disability discrimination under the Americans with Disabilities Act ("ADA"); (ii) for retaliation

---

[14] Defendant also argues that the performance evaluation is subject to a qualified privilege under Virginia law. *See Larimore v. Blaylock*, 259 Va. 568, 572 (2000) (holding that "[c]ommunications between persons on a subject in which the persons have an interest or duty are occasions of privilege."). A statement subject to a qualified privilege may only give rise to a defamation claim where the plaintiff demonstrates malice. *See id.* Because plaintiff's defamation claim is barred by the statute of limitations and relies on an opinion, it is unnecessary to address whether plaintiff has alleged facts sufficient to overcome the qualified privilege.

18

under the ADA and Title VII; and (iii) for defamation. The motion is denied with respect to plaintiff's claim for discrimination under Title VII, because that claim is based on conduct from 2017.

As noted at the hearing, plaintiff is strongly encouraged to obtain counsel, because federal court litigation is difficult to pursue without legal training.

An appropriate order will issue separately.

The Clerk is directed to provide a copy of this Memorandum Opinion to plaintiff at his address of record and to all counsel of record.

Alexandria, Virginia
October 23, 2019

/s/
T. S. Ellis, III
United States District Judge