IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| DAMIAN D. PHILLIPS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:19-cv-501 |
| | ) | |
| LOUDOUN COUNTY PUBLIC SCHOOLS, | ) | |
| *et al.*, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

*Pro se* plaintiff Damian D. Phillips has now filed his fourth amended complaint ("Fourth AC") against Defendants Loudoun County Public Schools and Loudoun County Public School Board (the "School Defendants") alleging: (i) race discrimination pursuant to Title VII of the Civil Rights of 1964 ("Title VII"); (ii) disability discrimination pursuant to the Americans with Disabilities Act ("ADA"); and (iii) retaliation pursuant to Title VII and the ADA. The School Defendants have moved to dismiss the Fourth AC in its entirety, arguing that plaintiff has failed to state a claim. For the reasons that follow, the School Defendants' motion to dismiss must be granted in part and denied in part. The motion to dismiss must be denied with respect to plaintiff's failure to hire claims and it must be granted with respect to plaintiff's retaliation claims.

### I. FACTUAL BACKGROUND

The following facts are derived from the allegations in the Fourth AC and plaintiff's supplemental brief,[1] which are taken as true solely for the purpose of resolving the motion to dismiss. *See Papasan v. Allain*, 478 U.S. 265, 283 (1986).

- Plaintiff is an African American male with a permanent disability. *See* Fourth AC

---

[1] In response to an Order issued on April 10, 2020, plaintiff filed a supplemental brief containing additional factual allegations. *See* Plaintiff's Supplemental Brief (Dkt. 58) ("Supp. Br.").

1

at 5.

- Plaintiff has been "diagnosed and classified as permanently disabled due to nerve (cut) damage" that cause muscular dysfunction to his shoulder. This causes plaintiff to experience: "dystonia[2], poor blood circulation, weakness, and loss of strength in the should, arm, and hand; numbness, difficulty with normal physical activities, such as lifting arms above head, poor balance, vison, and difficulty sleeping." *Id.* at 7.

- Plaintiff has a master's degree in general education and a master's degree in special education. *See id.* at 5.

- Plaintiff alleges that in 2016 and thereafter, when he applied for the positions at issue here, he was eligible for a provisional license[3] in Virginia. *See id.*[4]

- In August 2014, plaintiff was working for the School Defendants as a teaching assistant and as the head freshman football coach at Freedom High School. *See id.* at 6.

- In 2015, plaintiff applied and interviewed for the varsity football coach position at Freedom High School. *See id.* at 6.

- When plaintiff appeared for the 2015 varsity football coach interview, he overheard the principal, Doug Fulton, say: "This nigga will not be my next Head Varsity Football coach." *Id.* Plaintiff also overheard laughter from an unidentified community participant and from Athletic Director Brett Miller. *See id.* at 6-7.[5]

---

[2] Dystonia is a movement disorder where the muscles contract involuntarily.

[3] Under Virginia law, a provisional license is a

> nonrenewable license issued by the Board of Education for a specified period of time, not to exceed three years, to an individual who may be employed by a school division in the Commonwealth and who generally meets the requirements specified in the Board of Educations regulations for licensure, but who may need to take additional coursework, pass additional assessments, or meet alternative evaluation standards to be fully licensed with a renewable license.

Va. St. § 22.1-298.1.

[4] In the Fourth AC, plaintiff once again alleges that Virginia is a right-to-work state. As noted previously, this allegation is irrelevant to plaintiff's claims in any of his complaints. Va. Code § 40.1-58; Memorandum Opinion at 3, n. 4, dated October 23, 2019 (Dkt 41).

[5] Three to five months later, in September 2015, plaintiff alleges that an unnamed student emailed

2

- During the interview, Fulton also commented that he did not need another "disability" in his school. *Id.*

- Plaintiff alleges that his disability does not impact his ability to perform the essential functions of his job as a teacher or a coach. *See id.* at 7.

- In a separate incident, assistant principal Chaudhry Neelum and Fulton requested that a student ask plaintiff to escort the student to the bathroom to "baptize" him. Fourth AC at 8.

- When the student made the request of plaintiff, plaintiff immediately denied the request and reported the request to a special education teacher. *See id.*

- The next day, the student informed plaintiff that Neelum and Fulton had asked the student to make the request. *See id.*

- Later, Fulton and two assistant principals came to plaintiff's class and requested that plaintiff come to the office. *See id.*

- In response, plaintiff's students began chanting "Coach Phillips is in trouble." *Id.*

- In a 2015 meeting with the principal and two assistant principals, plaintiff was provided with a performance evaluation that stated:

    > Mr. Phillips needs to make sure that when he first receives information that could severely effect [sic] the health and/or safety of a student, he needs to inform the program teachers and the administration right away. Even if the student is telling Mr. Phillips out of a close relationship, it is Mr. Phillips' professional duty to pass on sensitive information.

    *Id.* at 8-9.

- Plaintiff objected to his 2015 performance evaluation and requested evidence that he had not followed the directive referenced. *See id.* at 10. In response, plaintiff was told that the school administration does not need any evidence to make such a statement. *See id.*

- After receiving his 2015 performance evaluation, plaintiff submitted complaints to Neelum regarding "the dissatisfaction of the misconduct [sic] and misinformation regarding the mistreatment from the administrative staff." *See id.* at 10. On April 6, 2015, plaintiff submitted his complaint with the subject line "Decision Regarding Work Performance Evaluation and, on June 12, 2015, he

---

plaintiff to let him know that Fulton had called plaintiff "something racist." *Id.* at 7.

3

submitted the complaint with the subject line "Disturbing Events." *Id.* Plaintiff does not provide any further details regarding these letters and does not allege that he complained of race or disability discrimination in these letters.[6]

- In July 2015, plaintiff voluntarily separated from the School Defendants and from Freedom High School due to an illness. *See id.* at 7. At the time of his separation, plaintiff alleges that he was in good standing with the School Defendants. *See id.*

- After recovering from his illness, plaintiff applied for several new teaching and coaching jobs with the School Defendants and with Fairfax County Schools. *See id.* at 11. Specifically, in 2017, plaintiff applied for the following positions:

    o On or about September 4, 2017, plaintiff applied for a head varsity basketball coach position with Loudoun County High School.

    o Plaintiff also alleges that he was "considered" for teaching and coaching positions with Dominion High School.

    o In 2017, plaintiff also alleges that he was interviewed for a teaching position with South Lakes High School in Fairfax County. *Id.* at 11-12.[7]

- Plaintiff alleges that Loudoun County High School initially considered and retained plaintiff for a coaching position but that he was removed from the position. *Id.* at 11. Specifically, plaintiff asserts that he applied for a freshman basketball coach position and a special education teacher position. *See* Supp. Br. at 4.

---

[6] These omissions are significant, because without alleging that he was opposing discrimination through his complaints or that the School Defendants understood plaintiff to be complaining of discrimination, plaintiff cannot establish that he engaged in protected activities. Here, plaintiff alleges only that he complained about his performance evaluation without mentioning any discrimination. General complaints, such as these do not constitute protected activities, because they do not demonstrate that plaintiff was opposing discrimination. *See Parker v. Ciena Corp.*, 787 F. App'x 817, 820 (4th Cir. 2019) (holding retaliation claim properly dismissed where plaintiff "complained about general workplace grievances" but "did not allege that he made of discrimination" nor did he allege facts that the defendant "would have understood to be about unlawful employment practices").

[7] In his Supplemental Brief, plaintiff also asserts for the first time that: (i) he applied for a special education teacher position and a varsity head basketball coach position at Park View High School in Loudoun County; and (ii) he applied for a special education teacher position and a freshman basketball coach position at Heritage High School in Loudoun County. *See* Supp. Br. at 4. The allegations regarding Park View and Heritage High Schools are not part of the Fourth AC and do not form the basis for plaintiff's claims of discrimination. Nor do these additional claims effect the analysis or result reached here.

4

- Plaintiff alleges that he was eliminated from consideration for the Loudoun County High School position, because of his 2015 performance evaluation and because, as he was informed by a Loudoun County High School teacher, the school called Fulton for a reference rather than the teacher. *See* Fourth AC at 11.

- With respect to Dominion High School, plaintiff applied for a position as a "Special Education (Emotional Disability) Teacher" and as a freshman basketball coach. Supp. Br. at 4.

- Plaintiff further alleges that, after he interviewed at Dominion High School for teaching and coaching positions, he learned that the Dominion High School principal had a conversation with Fulton and thereafter plaintiff was not contacted further regarding the position.

- Plaintiff also asserts that he applied for a "Special Education (Learning Disability)" teacher position at South Lakes High School in Fairfax County. *See* Supp. Br. at 4.

- With respect to South Lakes High School, plaintiff asserts that, after he was interviewed, the South Lakes High School assistant principal spoke with Fulton and told plaintiff that she wanted to know what had happened between plaintiff and Fulton from plaintiff. *See* Fourth AC at 12. Plaintiff was not hired for that position.

- Plaintiff applied for each of the Loudoun County positions using the School Defendants' online application system and each of the positions was open at the time that he applied. *See* Supp. Br. at 4.

- Plaintiff alleges that he was qualified for the special education teacher positions by virtue of his bachelor's degree, master's degree, provisional teacher's license, and work experience. Plaintiff asserts that he was qualified for the coaching positions by virtue of his coaching experience, his participation in the sports, his passage of the physical education Praxis[8] for the state of Virginia, and completion of CPR and first aid training. *See id.* at 5-6.

- On April 25, 2018, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging failure to hire and retaliation based on his applications for positions in 2017.

- Thereafter, plaintiff received a right-to-sue letter and timely filed his original complaint in this case.

- Plaintiff alleges:

---

[8] A Praxis test is one of a series of American teacher certification exams written and administered by the Educational Testing Service.

5

(i) that the adverse actions of the School Defendants are "continual";

(ii) that Fulton's disparaging comments constitute race and disability discrimination; and

(iii) that the School Defendants use of the performance evaluation constitutes retaliation. *Id.* at 13-14.

## II. PROCEDURAL BACKGROUND

Plaintiff filed his original complaint on April 24, 2019. After the School Defendants filed a motion to dismiss, plaintiff filed an amended complaint, which rendered moot the then-existing motion to dismiss. The School Defendants then filed a motion to dismiss the first amended complaint. In response, plaintiff filed his first motion to amend the complaint. After a hearing, plaintiff's motion to amend was granted and the School Defendants' second motion to dismiss was denied as moot.

On August 1, 2019, plaintiff filed his second amended complaint which asserted claims of race discrimination, disability discrimination, retaliation, and defamation. The School Defendants again moved to dismiss. After a hearing, a Memorandum Opinion and an Order issued granting in part and denying in part the motion to dismiss. Specifically, the October 23, 2019 Memorandum Opinion concluded:

(i) that plaintiff could not base a claim under Title VII or the ADA based on conduct that occurred in 2015, because an EEOC charge must be filed within 300 days after an unlawful employment action occurs and plaintiff's EEOC charge was not filed until April 25, 2018;

(ii) that plaintiff had stated a claim for failure to hire under Title VII based on conduct that occurred in 2017, in part based on the School Defendants' failure to address whether plaintiff had stated a claim based on the 2017 conduct in the motion to dismiss;

(iii) that plaintiff had failed to state a claim under the ADA, because plaintiff failed to identify his disability and failed to allege that the decision-makers at the schools to which he applied were aware of his disability;

(iv) that plaintiff failed to state a claim for retaliation under either Title VII or the

6

>      ADA, because plaintiff failed to establish that the School Defendants took any action in retaliation for his April 25, 2018 EEOC complaint; and
>
> (v)    that plaintiff had failed to state a claim for defamation, because it was barred by the statute of limitations and because it rested on statements of opinion.

*See* Memorandum Opinion, dated October 23, 2019 (Dkt. 41). The October 23, 2019 Order dismissed the defamation claim with prejudice but permitted amendment of plaintiff's ADA and retaliation claims. *See* Order, dated October 23, 2019 (Dkt. 42).

On October 24, 2019, before plaintiff received the Memorandum Opinion and Order, plaintiff filed a third amended complaint. That same day, an Order issued striking the third amended complaint so that plaintiff might have the benefit of the analysis contained within the October 23, 2019 Memorandum Opinion. *See* Order, dated October 24, 2019 (Dkt. 44). On November 1, 2019, plaintiff filed the Fourth AC and, on November 12, 2019, the School Defendants moved to dismiss the Fourth AC in its entirety and it is that motion that is at issue here.

Oral argument on the motion to dismiss the Fourth AC was held on December 20, 2019. During oral argument, plaintiff gave an impassioned, if sometimes incoherent,[9] speech regarding the racism to which he alleges he was subjected. After oral argument, the motion was taken under advisement. On December 23, 2019, plaintiff, without leave of court, submitted a letter providing further argument in opposition to the motion to dismiss. The School Defendants filed a response asking the Court to disregard the letter. Notwithstanding the School Defendants' request, the letter was reviewed and it essentially restates plaintiff's oral argument from December 20, 2019 and adds nothing to the existing record.

---

[9] Plaintiff's written pleadings suffer some of the same issues, which often renders them confusing and difficult to understand.

On April 10, 2020, an Order issued requiring that plaintiff: (i) to identify the positions to which he applied at Dominion High School and Loudoun County High School; (ii) to allege when and how he applied for the position; (iii) to allege the qualifications required for each of the positions for which he applied; and (iv) to allege detailed facts about how plaintiff met the requirements for each of the positions for which he applied. *See* Dkt. 57. On April 22, 2020, plaintiff filed his supplemental brief. On April 29, 2020, plaintiff filed a letter indicating that he is not "basing his claim on South Lakes High School as the subject matter." Letter at 1 (Dkt. 59).

On May 4, 2020, the School Defendants filed their reply to plaintiff's supplemental brief. *See* Response to Plaintiff Supplemental Brief (Dkt. 60) ("Supp. Reply"). In their supplemental reply, the School Defendants attach the declaration of Scott Ziegler, Ed. D., Assistant Superintendent of Human Resources and Talent Development at Loudoun County Public Schools and assert that several of the positions for which plaintiff applied were ultimately filled by African Americans. *See* Supp. Reply at 3. Although this declaration may become relevant at summary judgment or some later stage of this case, it is not appropriate to consider that information at the motion to dismiss stage. *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (holding "as a general rule[,] extrinsic evidence should not be considered at the 12(b)(6) stage").

On May 5, 2020, plaintiff filed a response to the supplemental reply. *See* Dkt. 62.

### III.

On January 23, 2020, a docket entry for a case before U.S. District Judge Claude M. Hilton was included in the docket for this case. That docket entry was in error. On February 14, 2020, plaintiff filed a motion for clarification. In the motion for clarification, plaintiff asserts

8

that he became aware that a hearing was set for January 24, 2020 and was confused as to why and why he was not contacted. His motion asks the Court to explain these events. The motion for clarification further recounts the basis for his causes of action in the Fourth AC and asks: "can the Court please define and clarify the Law [sic] actions mentioned above?" Mot. for Clarification at 3.

The motion for clarification will be granted in part and denied in part. The motion is granted insofar as plaintiff is informed that the January 23, 2020 entry on the docket was made in error by the Clerk's Office and has subsequently been corrected by the Clerk of the Court. There was no hearing in this case on January 24, 2020.

The motion for clarification must be denied insofar as it requests advice regarding the causes of action that plaintiff seeks to pursue in his Fourth AC. It is inappropriate for the Court to provide legal advice to plaintiff. Plaintiff has been repeatedly advised in this case to obtain legal counsel and that counsel should be the source of any advice that plaintiff obtains.

### IV.

The well-settled motion to dismiss standard does not require extensive elaboration. As the Supreme Court has made clear, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). Importantly, in making this determination, a district court must "accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff]." *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015). But a district court is not bound to "accept as true a legal conclusion couched as a factual allegation." *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014). Additionally, the Fourth Circuit has recognized that, "as a general

rule[,] extrinsic evidence should not be considered at the 12(b)(6) stage." *Am. Chiropractic Ass'n*, 367 F.3d at 234.

## A. FAILURE TO HIRE BASED ON RACE

The October 23, 2019 Memorandum Opinion made clear that "any discrimination claims based on the alleged events in 2015 would be untimely" and barred the 300-day requirement. Mem. Op. at 7.[10] The October 23, 2019 Memorandum Opinion continued and held that plaintiff had stated a claim based on the School Defendants failure to hire him in 2017 and based, in part, of the School Defendants' failure to challenge plaintiff's allegations regarding the 2017 conduct. *See id.* at 9-10. That ruling has been rendered moot and superseded by the filing of the Fourth AC which contains new factual allegations regarding the basis of plaintiff's failure to hire claims. The School Defendants now seek to dismiss the failure to hire claim in the Fourth AC on the basis that plaintiff has failed to allege: (i) that he applied for a specific position with the School Defendants; (ii) that he was qualified for those positions; and (iii) that he was rejected under circumstances giving rise to an inference of discrimination. Mot. at 7-9.

To state a claim for race discrimination claim based on a failure to hire, plaintiff must allege that: (i) he is a member of a protected group; (ii) there was a specific position for which he applied; (iii) he was qualified for that position; and (iv) he was rejected from the position under circumstances giving rise to an inference of discrimination. *See Williams v. Giant Food, Inc.*, 370 F.3d 423, 430 (4th Cir. 2004). The Fourth Circuit has recognized, however, that a Title VII

---

[10] An EEOC charge must be filed within 300 days after an alleged unlawful employment action occurs under both Title VII and the ADA. *See* 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117. As the Supreme Court has held, "[a] claim is time barred if it is not filed within these time limits." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). Here, plaintiff filed his EEOC charge on April 25, 2018, so the 300-day period extends back only as far as June 29, 2017.

plaintiff is not required to plead facts that constitute a *prima facie* case so long as he alleges facts sufficient to state all of the elements of his claim. *See Miller v. Carolina Healthcare Sys.*, 561 F. App'x 239, 241 (4th Cir. 2014) (citing *Swierkiewcz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). Thus, the analysis will start with whether plaintiff has demonstrated that he was rejected from the positions to which he applied at Dominion High School and Loudoun County High School in circumstances giving rise to an inference of discrimination.[11]

In his Fourth AC, although plaintiff has changed his failure to hire theory from the theory asserted in prior versions of his complaint,[12] he has successfully alleged facts giving rise to an inference of discrimination. The Fourth AC alleges that Fulton disclosed to decision-makers at Dominion and Loudoun County High Schools his discriminatory views and a discriminatory

---

[11] The analysis will not focus on South Lakes High School, Heritage High School, or Park View High School. South Lakes High School is in Fairfax County and the School Defendants were therefore not responsible for any decisions made by that school. In his Letter, plaintiff acknowledges that he is not basing any of his claims for failure to hire on the conduct of South Lakes High School. *See* Letter at 1. It is also inappropriate to consider any claim based on Heritage and Park View High Schools' decisions not to hire plaintiff as there were no allegations in the Fourth AC regarding any applications to those schools.

[12] To the extent plaintiff attempts to rely on a continuing violation theory based on his 2015 performance evaluation, plaintiff may not do so. As the Memorandum Opinion noted the period of separation between July 2015 and 2017 eliminate the possibility of a continuing violation. *See* Mem. Op. at 8 & n.8. Moreover, "[c]ourts have held that the obligation to challenge a performance appraisal that is allegedly discriminatory arises at the time that the evaluation is issued." *Woolery v. Brady*, 741 F. Supp. 667, 669 (E.D. Mich. 1990) (citations omitted). Courts reasonably require plaintiffs to raise a claim of discrimination where a "[p]laintiff was aware, or at least believed, that he had been discriminated against" in his evaluation and "cannot allow a claim to be considered as 'continuing' only because [the plaintiff] failed to seek relief" at the time. *Smith v. Ala. Dept. of Corr.*, 131 F. Supp. 1318, 1322 (M.D. Ala. 2001) (citations omitted). Here, plaintiff immediately objected to the performance evaluation, felt humiliated by it, and submitted complaints regarding it, but did not take steps to file an EEOC charge. *See* Fourth AC at 10. Thus, the performance evaluation was a discrete act, which plaintiff recognized as discriminatory, and failed to bring a timely claim. Accordingly, plaintiff may not attempt to circumvent the 300-day requirement by alleging a continuing violation.

reference that substituted for the independent judgment of those decision-makers. *See* Fourth AC at 13. With respect to each of his various applications for positions, plaintiff alleges that the school administrators contacted Fulton, who plaintiff alleges directly discriminated against plaintiff in 2015, and that, after Fulton provided his discriminatory views and reinforced the performance evaluation, he was not contacted further regarding those positions and was not hired for any of the positions. *See id.* at 11-12. The allegation that Fulton played a decisive role in plaintiff's failure to obtain a position by virtue of his disclosure of his discriminatory views establishes an inference of discrimination and is sufficient to survive a motion to dismiss. Discriminatory intent may be imputed to a decision-maker when discriminatory bias infects the decision-making process.[13] That inference of discrimination can of course be rebutted at a later stage of this proceeding if the decision-makers did not receive information from Fulton or where not influenced by his views of plaintiff, but that is an issue to be decided at summary judgment or at trial.

In their motion to dismiss, the School Defendants correctly point out that plaintiff makes only cursory allegations regarding his applications to Loudoun County High School and Dominion High School. Following supplemental briefing by the parties, the School Defendants acknowledge that plaintiff has now provided specific information to identify the positions for which he applied, how and when plaintiff applied for those positions, and detailed facts regarding how plaintiff was qualified for those positions. *See* Supp. Reply at 2. Thus, the School Defendants only remaining argument is that plaintiff has not "adequately or accurately described the qualifications for the positions he has identified." *Id.* In his supplemental brief,

---

[13] This theory is generally known as the cat's paw theory, which applies "'when [an] official has no discriminatory animus but is influenced by previous company action that is the product of a like animus in someone else.'" *Lim v. Azar*, 310 F. Supp. 3d 588, 602 (D. Md. 2018) (quoting *Staub v. Proctor Hosp.*, 562 U.S. 411, 417 (2011)).

however, plaintiff set forth detailed allegations regarding what qualifications were necessary for both the teaching positions and the coaching positions for which he applied. *See* Supp. Br. at 5-6. The School Defendants neither explain what further information is necessary nor identify information that is inaccurate when they attack these allegations. As the Fourth Circuit has cautioned, courts must be cognizant of the "danger that courts might apply the 'expectations' or 'qualification' element of the prima facie case too strictly in some cases, resulting in the premature dismissal of potentially meritorious claims of unlawful discrimination." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 516 (4th Cir. 2006). Plaintiff's allegations regarding the qualifications required for the positions for which he applied are sufficient to withstand a motion to dismiss, because plaintiff has plausibly alleged both what the qualifications are and how he met them. *See Iqbal*, 556 U.S. at 678. Accordingly, the motion to dismiss must be denied in this regard.

### B. FAILURE TO HIRE BASED ON DISABILITY

Plaintiff claim of disability discrimination also follows the *McDonnell Douglas* burden-shifting framework. *See Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (citing *McDonnell Douglas*, 411 U.S. at 802); *Perry v. Comput. Scis. Corp.*, 429 F. App'x 218, 219–20 (4th Cir. 2011). Under this framework, a plaintiff must show that: (i) he is disabled within the meaning of the ADA; (ii) he was otherwise qualified for the position; and (iii) he suffered an adverse employment action on the basis of his disability. *See id.* (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005)).

The School Defendants make many of the same arguments with respect to plaintiff's claim of disability discrimination as they did for his claim of race discrimination. They also argue, however, that plaintiff has not adequately alleged that he is disabled within the meaning of the

13

ADA. Although the School Defendants recognize that plaintiff "more clearly set forth his alleged disability," the School Defendants maintain that plaintiff's allegation that his "disability does not impact [his] ability to perform the essential functions of [his] job in either a teaching or a coaching capacity" is "fatal" to his claim. Mot. at 11 (citing Fourth AC at 7). They are incorrect. Indeed, plaintiff is required to include such an allegation, because the ADA prohibits discrimination against "a qualified individual with a disability" which is defined as "an individual with a disability who, with or without reasonable accommodation, *can perform the essential functions of the employment position* that such individual holds or desires." 42 U.S.C. § 12111(8) (emphasis added). Here, plaintiff has alleged that he has a disability that impacts the major life activities of lifting, seeing, and sleeping. *See* 42 U.S.C. § 12102(2)(A) ("[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, [and] bending..."). Plaintiff does not, as the School Defendants argue, assert that his disability does not impair him. Mot. at 11. Rather, plaintiff alleges that his disability does impair him, but not in ways that prevent him from being a qualified person with a disability, namely not in a way that would prevent him from being capable of performing the duties of a teacher or coach. Thus, plaintiff has alleged that he has a disability for purposes of the ADA.

Here again, plaintiff's contention that the decision-maker's communications with Fulton infected the decision-making process with discriminatory bias states a claim that survives the School Defendants' motion to dismiss. Plaintiff alleges that Fulton knew of plaintiff's disability, made discriminatory remarks regarding his disability, and then communicated with the relevant decision-makers before they decided not to hire plaintiff. But again, the inference of discrimination can be rebutted at the summary judgment stage or at trial. As with his Title VII failure to hire claim, plaintiff has also satisfied the remaining elements of his *prima facie* case for

his ADA failure to hire claim. Accordingly, the School Defendant's motion to dismiss must be denied with respect to plaintiff's failure to hire claim under the ADA.

### C. RETALIATION UNDER TITLE VII AND THE ADA

Plaintiff also alleges that the School Defendants violated Title VII and the ADA by retaliating against him. To establish a *prima facie* case of retaliation, plaintiff must prove three elements: "(1) that [he] engaged in protected activity; (2) that [his] employer took an adverse employment action against [him]; and (3) that there was a causal link between the two events." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 271 (4th Cir. 2015) (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005)) (addressing Title VII claim); *A Society Without a Name v. Va.*, 655 F.3d 342, 350 (4th Cir. 2011) (same elements for ADA claim).

The essence of plaintiff's retaliation claims is that the School Defendants' retaliated against him by disseminating his 2015 performance evaluation and by having Fulton provide a reference regarding plaintiff's 2015 employment. *See* Fourth AC at 14, ¶ 7. In the October 23, 2019 Memorandum Opinion, plaintiff's retaliation claims were dismissed because plaintiff failed to establish the third element of his *prima facie* case. *See* Mem. Op. at 14. Plaintiff has not corrected this deficit in his Fourth AC. As with his prior amended complaint, the Fourth AC only identifies two possible protected activities: (i) his April 25, 2018 EEOC charge of discrimination; and (ii) his two 2015 complaints regarding the performance evaluation.

The October 23, 2019 Memorandum Opinion correctly held that the April 25, 2018 EEOC charge cannot support a retaliation claim because it was not filed until *after* the alleged adverse employment actions took place. *See* Mem. Op. at 14. To state a claim for retaliation, however, plaintiff "must show that the adverse employment action took place after the protected

15

activity and because of the protected activity." *Byers v. HSBC Fin. Corp.*, 416 F. Supp. 2d 424, 438 (E.D. Va. 2006) (citing *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 651 (4th Cir. 2002) and *Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998)). Accordingly, plaintiff cannot state a claim for retaliation based on the April 25, 2018 EEOC charge.

Plaintiff's reliance on his complaints regarding the performance evaluation suffers a different problem. There, it is not clear that plaintiff engaged in protected activity. In the October 23, 2019 Memorandum Opinion, plaintiff was specifically instructed to amend his complaint to allege sufficient facts to demonstrate "whether these complaints constituted protected activities under Title VII or the ADA." Mem. Op. at 14, n.13. Plaintiff has not done so. Although plaintiff has included new details regarding when and to whom he submitted his complaints of mistreatment, plaintiff does not allege that he complained of race or disability discrimination as required to establish that he engaged in protected activity. *See Richardson v. Richland Cnty. Sch. Dist.*, 52 F. App'x 615, 617 (4th Cir. 2002) ("Richardson has not presented any evidence that she informed Richland County that her complaints were based on race or age discrimination; therefore, Richardson cannot show that she engaged in a protected activity.").[14]

Furthermore, as previously stated in the October 23, 2019 Memorandum Opinion, even

---

[14] *See Godon v. N.C. Crime Control & Pub. Safety*, 141 F.3d 1158, 1998 WL 193109, at *3 (4th Cir.1998) (unpublished) (upholding dismissal of a retaliation claim because disagreement with disciplinary practices does not constitute opposition to unlawful employment practices); *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir.1995) (in an ADEA case, "a general complaint of unfair treatment does not translate into a charge of illegal age discrimination"); *Signore v. Bank of America, N.A.*, No. 12-cv-539, 2013 WL 6622905, at *4 (E.D. Va. Dec. 13, 2013) (dismissing retaliation claim where plaintiff failed to establish that she complained of discrimination); *Fawley v. Layman, Diener, & Borntrager Ins. Agency, Inc.*, No. 17-cv-44, 2018 WL 3039737, at * (W.D. Va. June 19, 2018) (holding that complaints regarding evaluation were not protected activity where plaintiff did not allege that she told anyone that the "'false statements' were the result of her pregnancy or the result of discrimination").

assuming *arguendo* that plaintiff engaged in a protected activity, plaintiff must allege that the persons who are alleged to have retaliated against him *knew* of his protected activities. He has not done so in the Fourth AC. The Fourth Circuit has held that knowledge is "absolutely necessary" to support the requisite causation between plaintiff's protected activities and an alleged adverse employment action by the School Defendants. *Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir.1998); *see also Landino v. Sapp*, 520 F. App'x 195, 198 (4th Cir. 2013) (plaintiff failed to allege "that any of his supervisors responsible for the alleged discrimination knew that he was claiming discrimination based on a protected status"). In the Fourth AC, plaintiff alleges that a human resources administrator and Fulton retaliated against plaintiff by using the performance evaluation and negative references. Plaintiff does not however allege that either individual had any knowledge of plaintiff's alleged protected activities. Knowledge by the person alleged to be retaliating is required to state a retaliation claim. Thus, plaintiff's retaliation claims must be dismissed.

Because this is plaintiff's fifth attempt at stating his retaliation claims, plaintiff's retaliation claims will be dismissed with prejudice. Rule 15(a)(2), Fed. R. Civ. P., provides that courts should "freely give leave [to amend] when justice so requires." Courts need not give leave to amend, however, when amendments would be futile. *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). Given that plaintiff has attempted to state a claim for retaliation in five separate complaints (the original complaint and four amendments), it appears that permitting a fifth amendment would be futile. *See U.S. ex rel. Godfrey v. Kellogg, Brown & Root, Inc.*, No. 05-cv-1418, 2008 WL 9878351, at *9 (E.D. Va. Mar. 13, 2008) ("Plaintiff has had three opportunities to plead his case and further amendment would be futile."). Moreover, the Memorandum Opinion specifically addressed what plaintiff would need to allege in order to state

a claim for retaliation and plaintiff has failed to do so. Accordingly, plaintiff's retaliation claims must be dismissed with prejudice.

V.

For the reasons set forth above, Defendant's motion to dismiss (Dkt. 46) must be granted in part and denied in part. Plaintiff's Title VII and ADA failure to hire claims survive the motion to dismiss because plaintiff has alleged that Fulton's discriminatory views infected the decision-making process with respect to his various applications for employment with the School Defendants. Although defendant may rebut the inference of discrimination at the summary judgment stage or at trial, plaintiff has alleged sufficient facts at this stage to state a claim for relief based on the failure to hire under both Title VII and the ADA. For the reasons stated, Plaintiff's retaliation claims must be dismissed with prejudice.

An appropriate order will issue separately.

The Clerk is directed to provide a copy of this Memorandum Opinion to plaintiff at his address of record and to all counsel of record.

Alexandria, Virginia
May 6, 2020

T. S. Ellis, III
United States District Judge