IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DAMIAN D. PHILLIPS, )
)
      Plaintiff, )
)
v. ) 1:19-cv-501 (LMB/MSN)
)
LOUDOUN COUNTY PUBLIC SCHOOLS, et )
  al., )
)
      Defendants.

## MEMORANDUM OPINION

Before the Court is defendants Loudoun County Public Schools and Loudoun County Public School Board (collectively "LCPS")'s Motion for Summary Judgment Filed Pursuant to Fed. R. Civ. P. 56(a) ("Motion") [Dkt. No. 116]. Pro se plaintiff Damian D. Phillips ("plaintiff" or "Phillips"), is a disabled[1] African American male who was a coach and special education teacher's assistant at Freedom High School ("FHS") in Loudoun County from 2014–2015, before he requested a voluntary separation due to illness. [Dkt. No. 45]. In 2017, he applied to be rehired for positions at Dominion and Loudoun County High Schools, but was not hired for any of those positions. Phillips alleges that the reason he was not hired was because defendants contacted Doug Fulton ("Fulton"), who was the principal at FHS when plaintiff was employed at that school, and that Fulton had expressed racist and anti-disabled statements about plaintiff. Id.

---

[1] Specifically, plaintiff states in his Fourth Amended Complaint ("FAC") [Dkt. No. 45]:

> Since March 17, 2009, I have been properly diagnosed and classified as permanently disabled, due to nerve (cut) damages during surgery that caused permanent muscular dysfunction at the shoulder region. The disability causes plaintiff dystonia, poor blood circulation, weakness, and loss of strength in the shoulder, arm, and hand; numbness, difficulty with normal physical activities, such as lifting arms above head, poor balance, vision, and difficulty sleeping.

Phillips claims that after Fulton provided his discriminatory views and highlighted a negative performance evaluation from 2015, Phillips was not contacted further regarding those positions and was not hired for any of the positions. Id. On this basis, he claims that the failure to hire him was based on his race and disability in violation of Title VII and the Americans with Disabilities Act ("ADA"). For the reasons that follow, defendants' Motion will be granted.

## I. BACKGROUND

### A. **Procedural History**

On April 24, 2019, plaintiff filed his initial complaint alleging employment discrimination pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin) and the Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.[2] [Dkt. No. 1]. LCPS filed a Motion to Dismiss on May 21, 2019. On June 7, 2019, before the court ruled on the Motion to Dismiss, Phillips filed a First Amended Complaint [Dkt. No. 16], which resulted in dismissal of LCPS' Motion to Dismiss as moot. LCPS filed its second Motion to Dismiss on June 16, 2019. Phillips again sought leave to amend his complaint, which was granted on July 19, 2019. On August 1, 2019, Phillips filed a Second Amended Complaint. [Dkt. No. 35]. LCPS filed its third Motion to Dismiss on August 15, 2019. On October 23, 2019 [Dkt. No. 42], the Court denied the motion to dismiss Phillips' claim for discrimination under Title VII, "because that claim is based on conduct from 2017," granted the motion to dismiss Phillips' claim for defamation with prejudice, and granted the motion to dismiss Phillips' claims for disability discrimination under the ADA and claims for retaliation under Title VII and the ADA without prejudice. [Dkt. No.

---

[2] This civil action was initially assigned to Judge T. S. Ellis, III. It was transferred to this Court on July 30, 2020.

2

42]. On October 24, 2019, Phillips, in contravention of the Court's October 23, 2019 Order, filed what was his Third Amended Complaint [ECF No. 43] raising a claim which had been dismissed with prejudice. On October 24, 2019, the Court sua sponte struck Phillips' October 24, 2019 filing due to its failure to comply with the Court's October 23, 2019 Order. [ECF No. 44]. On November 1, 2019, Phillips filed his Fourth Amended Complaint ("FAC"). [ECF No. 45]. LCPS filed its fourth Motion to Dismiss, after which the Court requested that Phillips submit a supplemental brief, which he did on April 22, 2020. [ECF No. 58]. On May 6, 2020, the Court entered an order granting in part and denying in part the motion to dismiss, [ECF No. 64], which resulted in dismissal with prejudice of Phillips' claims for retaliation under the ADA and Title VII, leaving only failure to hire under Title VII and the ADA as the remaining claims in this litigation.

### B. Factual Background

The evidence of any bias towards African Americans or disabled persons consists solely of plaintiff's uncorroborated allegations and hearsay that would not be admissible at trial. Phillips alleges that before an interview for a varsity football coaching position in 2015, he overheard Fulton state, "This nigga will not be my next Head Varsity Football coach" right before Phillips entered the room for the interview. [Dkt. No. 45] at 6–7. Phillips further alleges that during that same interview, Fulton stated "that he does not need another 'disability' in his school.'" Phillips claims that "a community participant (Unknown) and the Athletic Director, Brett Miller" were present at that meeting, but there is no evidence in the record supporting that claim and no statement by Miller or anyone else to corroborate this accusation. Id. at 7. Phillips also alleges that he later "received an email transcript from an FHS student (DE), dated September 9th, 2015, discussing that he and others, heard Doug Fulton had 'called me something racist.'" Id. Fulton has provided an affidavit in which he denies ever making these comments.

3

Def. Ex. 2 ¶ 13 ("I never uttered these words or words to this effect. It does not even make sense to allege such outrageous things since Phillips was already employed by FHS based on my recommendation to hire him."). Finally, Phillips alleges:

> Thereafter, (RK) student from the special education department requested that I escort him to the restroom for me to 'baptize' him. I immediately denied his request. Most importantly, I reported this matter to Ms. Loveless, a former special education assistant FHS teacher. The very next day, student (RK) returned to school and mentioned to me that it was 'cool' I did not 'baptize' him and that his parents told him 'the prophets were all dead anyway.' In addition to that, student (RK) disclosed that his neighbor, assistant Principal Chaudhry Neelum, and Doug Fulton were the one who put him up to asking (RK) to harass plaintiff in order to escort him (RK) to the restroom to be 'baptize[d].' To improve this event, student (RK) stated, I (plaintiff), 'could not do anything about it,' due to the fact of Ms. Chaudhry Neelum being his next-door neighbor and their relationship.

Id. at 8.

On April 6, 2015, Phillips was evaluated on a Classified Evaluation Form used by LCPS. Def. Ex. 4. Item number 6 on the evaluation reads:

> Mr. Phillips needs to make sure that when he first receives information that could severely affect the health and/or safety of a student, he needs to inform the program teachers and the administration right away. Even if the student is telling Mr. Phillips out of close relationship, it is Mr. Phillips' professional duty to pass on sensitive information.

Phillips disagreed with item number 6 in the Classified Evaluation Form. Def. Ex. 5.[3] Phillips voluntarily separated from employment with LCPS, effective June 17, 2015, due to personal illness. Def. Ex. 2, ¶ 9; Ex. 3, 95:2–16; Ex. 6.

After his voluntary separation, Phillips applied for seven positions at Dominion High School and/or Loudoun High School between June 29, 2017 and September 1, 2017:

---

[3] Phillips has also provided what appears to be an email chain with a former student, "Dymond Harris," which contains questions from Phillips for Dymond Harris to answer "[u]nder penalty of perjury." She writes that Phillips helped her while she was pregnant with her son and that "he didn't know anything about me running away I never told him what I was gonna do I left for family issues." [Dkt. Nos. 121-16 and 121-17]. Phillips also provided an email from "Tammy Harris" praising Phillips and describing issues with Fulton. [Dkt. No. 121-15]. These statements are not relevant to Phillips' claims of discriminatory failure to hire.

4

- July 2, 2017, Dominion High School, Basketball, Boys' JV Head Coach
- July 17, 2017, Dominion High School, SPED Teacher
- July 17, 2017, Dominion High School, SPED Teacher
- July 17, 2017, Loudoun County High School, Basketball, Boys' Freshman Head Coach
- July 27, 2017, Loudoun County High School, SPED Teacher
- August 3, 2017, Loudoun County High School, SPED Teacher
- September 1, 2017, Loudoun County High School, Basketball, Boys' JV Head Coach

Ex. 7. Those positions were filled by four Caucasian and three African American persons, three of whom were females and four of whom were males. Id. ¶ 7.

After Phillips applied for these positions, Kristi Hurd ("Hurd"), a Supervisor, Secondary and Substitutes, Human Resources and Talent Development at LCPS, conducted a background investigation of Phillips to determine his suitability for rehire. Def. Ex. 8 ¶¶ 2–3. That investigation included speaking with Chaudhry who, as the assistant principal at FHS, was Phillips' last immediate supervisor. Id. ¶ 5; see also Def. Ex. 3, 50:12–15. Although Phillips alleges that Bonnie Robertson ("Robertson") conducted the background investigation and that either she alone, or with Hurd, spoke to Fulton as part of that investigation, Fulton has submitted an affidavit denying that he had any knowledge until this lawsuit of Phillips' attempts to be rehired by LCPS, and that he did not speak with anyone at LCPS regarding Phillips' applications for rehire in 2017. Def. Ex. 2, ¶¶ 10–12. Additionally, Hurd has submitted an affidavit that she "did not speak with or consider any information from Doug Fulton, Principal of FHS, as part of [her] background investigation of Phillips in 2017 or the decision not to rehire him." Def. Ex. 8 ¶ 8. There is no statement in the record from Bonnie Robertson confirming plaintiff's assertion.

It is undisputed that when Hurd spoke with Chaudhry to determine if Phillips was suitable for rehire, Chaudhry expressed concern that Phillips formed relationships with students and football players that were too close and not appropriate for a teacher/coach. Def. Ex. 8, ¶ 6.

Defendants argue that Hurd declined to approve rehiring Phillips based on these concerns expressed by Chaudhry. Def. Ex. 8, Hurd Decl. ¶¶ 6–9 ("Given the concerns raised by Ms. Chaudhry and the comments in Phillips' April 6, 2015 performance evaluation, I declined the request/recommendation By [sic] Loudoun County High School to hire Phillips."). These concerns are also reflected in the Employee Background Investigation Report Form and Hurd's handwritten contemporaneous notes from her interview with Chaudhry. Def. Ex. 8.

## II. DISCUSSION

### A. Standard of Review

In the Fourth Circuit, summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Norfolk S. Ry. Co. v. City of Alexandria, 608 F.3d 150, 156 (4th Cir. 2010) (quoting Fed. R. Civ. P. 56). A genuine dispute about a material fact exists if "after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the nonmoving party." Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012). All inferences must be made in favor of the nonmoving party. Hawkins v. McMillan, 670 F. App'x 167, 168 (4th Cir. 2016).

### B. Analysis

Phillips' remaining claims are for discriminatory failure to hire pursuant to Title VII of the Civil Rights Act of 1964 and the ADA. Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish a Title VII claim through either direct or indirect evidence of discrimination. Direct evidence is "evidence of conduct or statements that both reflect directly on the alleged discriminatory attitude and that bear directly on the contested employment decision." Johnson v. Mechs. &

6

Farmers Bank, 309 F. App'x. 675, 681 (4th Cir. 2009). Indirect claims under Title VII are analyzed under the burden-shifting framework laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–07 (1973). Plaintiff bears the initial burden of establishing a prima facie case of discrimination by showing: (i) that he is a member of a protected group; (ii) that there was a specific position for which he applied; (iii) that he was qualified for that position; and that he was rejected from the position under circumstances giving rise to an inference of discrimination. See Williams v. Giant Food Inc., 370 F.3d 423, 430 (4th Cir. 2004).

If the plaintiff establishes a prima facie case, the burden shifts to defendant to produce evidence that "the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." Texas Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 254 (1981). The "explanation provided must be legally sufficient to justify a judgment for the defendant," but defendant "need not persuade the court that it was actually motivated by the proffered reasons." Id. If a defendant offers admissible evidence sufficient to meet his or her burden of production, the burden shifts back to plaintiff to prove discrimination and "that [defendants'] proffered justification is pretextual." Mereish v. Walker, 359 F.3d 330, 334 (4th Cir. 2004). A plaintiff can do so by showing that the employer's "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of . . . discrimination." Id. at 336 (quotation omitted).

Because Phillips alleges no direct evidence of discrimination that resulted in LCPS' decision not to rehire him, his claim must be analyzed under the McDonnell Douglas burden-shifting framework. Defendants concede that Phillips is African American and disabled, and that he applied for seven positions at Dominion and/or Loudoun County High Schools, beginning in 2017 and was not hired for any of the positions. This satisfies the first and second prongs of the

7

prima facie showing. As to the third prong, plaintiff has produced no evidence contradicting that Chaudhry raised concerns during Hurd's background investigation about Phillips' lack of boundaries with students, including those over which he had no supervisory role. This concern was also documented in Phillips' performance evaluation dated April 6, 2015. Although plaintiff disputes the accuracy of his performance evaluation and disputed the evaluation at the time, these concerns were a reasonable, non-discriminatory basis for defendants to decide that Phillips was not qualified for rehire. As the Fourth Circuit has held, "[w]e do not sit as a super-personnel department weighing the prudence of employment decisions made by the defendants." Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 272 (4th Cir. 2005) (internal quotations omitted). Additionally, that three of the seven positions were filled by African Americans also undercuts plaintiff's claim that he was not hired because of his race. Considering Phillips' prior supervisor's concerns and the lack of any circumstances giving rise to an inference of discrimination, Phillips cannot make out a prima facie case of racial discrimination.

Even if the Court were to find that Phillips established a prima facie case of discrimination, LCPS has provided sufficient factual evidence that the decision not to rehire Philips was for a legitimate non-discriminatory reason. The concerns that Chaudhry relayed to Hurd that Phillips formed too close relationships with students were supported by the April 2015 performance evaluation and reflected in Hurd's handwritten notes from her call with Chaudhry and review of the Employee Background Investigation Form dated October 11, 2017. Def. Ex. 8. Accordingly, LCPS has met its burden of production.

Phillips has not shown that this explanation was a pretext for discrimination. Phillips' only evidence of discriminatory animus towards African Americans or disabled persons is the alleged derogatory comments that Fulton made regarding plaintiff's race and disability at a

meeting during the 2014–2015 school year, and plaintiff's unsubstantiated claims that Fulton relayed these biased opinions to Hurd during the background investigation in 2017. Although Phillips alleges that Hurd spoke with Fulton in conducting the background investigation, he offers only uncorroborated hearsay in support of this assertion. Hearsay evidence is an out-of-court statement offered to prove the truth of the matter asserted. In re C.R. Bard, Inc., MDL. No. 2187, Pelvic Repair Sys. Prod. Liab. Litig., 810 F.3d 913, 925–26 (4th Cir. 2016). "[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment." Maryland Highways Contractors Ass'n, Inc. v. State of Md., 933 F.2d 1246, 1251 (4th Cir. 1991). For example, plaintiff's attempt to link Fulton to defendants' failure to rehire him in 2017 relies on the assertion in his memorandum in opposition that "Kristi Hurd stated that she spoke directly to Doug Fulton on October 31, 2017 about plaintiff [sic] performance evaluation and disability with the complaint letters before her." [Dkt. No. 121] ¶ 9.[4] That statement is hearsay, as plaintiff is describing a statement made out of court by Hurd and offering it to prove that Hurd spoke to Fulton. Similarly, plaintiff's claims that Dominion High School Assistant Principal "Jamie Braxton stated that John Brewer spoke with Doug Fulton," and that "Assistant Principal, Lisa Taweel at South Lakes High School stated during plaintiff's interview that she spoke with Doug Fulton, and as a result of that plaintiff was rejected," are unsupported by any evidence in the record. Id. ¶¶ 9, 11. For example, plaintiff has not offered any declarations from these persons confirming what he alleges. Without these school officials affirming that they made the alleged statements, the statements would not be admissible for multiple reasons, including that they are hearsay.

---

[4] Plaintiff has also attached letters, emails, and texts from former students and parents. While these documents suggest there may be racial disparities in the school, this evidence is not directly relevant to Phillips' claims and the evidence in this format would not be admissible at trial.

Moreover, plaintiff's claims about contacts with Fulton are directly contradicted by Hurd and Fulton's affidavits. Def. Ex. 8, Hurd Declaration ¶ 8 ("I did not speak with or consider any information from Doug Fulton, Principal of FHS, as part of my background investigation of Phillips in 2017 or the decision not to rehire him"); Ex. 2, Fulton Declaration ¶¶ 10–12 ("I have . . . never spoken or been in contact with anyone within LCPS regarding Phillips' potential for rehire and have provided no references (good or bad)"). Defendants also provide Hurd's completed Employee Background Investigation Form dated October 11, 2017 and her handwritten contemporaneous notes from her call with Chaudry. Def. Ex. 8. Each of these pieces of evidence support that Hurd spoke only to Chaudhry regarding rehiring Phillips, Chaudhry expressed concern that Phillips formed relationships with students and football players that were too close and not appropriate for a teacher and coach, Fulton was neither aware of Phillips applications for rehire nor contacted about them, and Hurd relied on these concerns in deciding not to approve Phillips for rehire.

Phillips attempts to dispute that Hurd only spoke to Chaudhry and not to Fulton by arguing that Bonnie Robertson ("Robertson") conducted the investigation; however, once again he has not supported this contention with any statement from Robertson. The only evidence he submits is an email purportedly from Robertson to plaintiff, which does nothing to establish her role in the background investigation of Phillips. [Dkt. No. 121-20]. At most, it supports the inference that Phillips gave permission for LCPS to contact his references to conduct its background investigation, and that Robertson assisted Hurd with administrative tasks related to the investigation.[5] Although the Employee Background Investigation Form bears Robertson's

---

[5] The email exchange is as follows:

10

name under "Information Taken By," it also states contact was made with Chaudhry who reported Phillips was:

> No good. Not at all. TA in the ED program. Dev. Relationship with a girl. She was troubled. Wouldn't share info. Got upset at Neelum about student safety. [indecipherable]–afraid to be alone with kids. Tried being their friend. Entertained football players.

It is clear from this notation in the background form that Chaudhry was the person who provided the information to human resources that led Hurd to determine Phillips was not a suitable rehire. Accordingly, Phillips has failed to produce sufficient evidence from which a reasonable jury could find that the decision not to rehire him was based on racial animus. Moreover, defendants have provided sufficient unrebutted evidence from which a reasonable jury could conclude that the reasons given for not rehiring plaintiff were not pretextual.

Plaintiff's claim under the ADA similarly fails. This claim is based on one alleged statement that Fulton made to Phillips at a meeting during the 2014–2015 school year that "I don't need another disability in my school." Fulton denies making this statement and there is no evidence in the record other than plaintiff's allegation to support it. Moreover, even if Fulton had made this statement, Phillips does not provide any admissible evidence that Fulton's discriminatory sentiment was passed along to those making hiring decisions in 2017, and that Phillips was denied employment by LCPS as a result. Further, there is no factual evidence to establish that Hurd even knew of Phillips' disability when determining he was not a suitable

---

> Robertson: Hi Mr. Phillips, I am working on some things here in personnel and would like to contact some of your references. Could you respond to this email giving me permission to contact your current supervisor.
>
> Phillips: Greetings Mrs. Robertson, With respect to our conversation, yes I give you permission to contact my references. Have a great day. Thanks, Damian

[Dkt. No. 121-20].

candidate for rehire. Accordingly, Phillips has failed to produce sufficient evidence upon which a reasonable jury could conclude that defendants did not rehire him because he is disabled.

### III. CONCLUSION

For the reasons stated above, defendants' Motion will be GRANTED by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 19th day of January, 2021.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge